UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LINDA A. FRY,

      Plaintiff,

 -v-

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

      Defendant.
_____

16-CV-337-LJV-MJR
REPORT AND RECOMMENDATION

  This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo pursuant to 28 U.S.C. §636(b)(1) for the preparation of a report and recommendation on dispositive motions. (Dkt. No. 11).

  Plaintiff Linda A. Fry brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security Disability Insurance Benefits under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, it is recommended that Fry's motion (Dkt. No. 12) be granted, the Commissioner's motion (Dkt. No. 13) be denied, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

---

[1]  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is automatically substituted for the previously named defendant Carolyn W. Colvin. The Clerk of Court is directed to amend the caption accordingly.

## BACKGROUND

I. *Procedural History*

On August 8, 2011, Fry filed an application for Disability Insurance Benefits ("DIB") alleging disability since June 10, 2011 due to two bulging discs, two herniated discs, and knee problems. (*See* Tr. 189-91, 214, 218).[2] Fry later amended her onset date to November 1, 2011. (Tr. 33). Fry injured herself at work in 2004 and suffered additional workplace injuries in 2010 and 2011. (Tr. 40-41, 76-79, 87, 353). Fry's DIB application was denied on November 7, 2011 (Tr. 105, 113-16), after which she requested a hearing before an Administrative Law Judge (Tr. 120). On September 29, 2014, Fry, represented by counsel, appeared before Administrative Law Judge Donald T. McDougall (the "ALJ") for a hearing. (Tr. 70-104).[3] On October 16, 2014, the ALJ issued his decision denying Fry's DIB claim. (Tr. 9-29). Fry requested review by the Appeals Council (Tr. 7), but on April 5, 2016, the Appeals Council denied Fry's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). This action followed.[4]

II. *Summary of the Evidence*

A. *Medical Evidence*

Fry injured her back in 2004 while working as a housekeeper at a local hotel. (Tr. 40-41, 75). She did not return to work at the hotel, but in 2006 she began working in the cafeteria at a local school. (Tr. 75-77). On May 27, 2010, Fry slipped and fell in the cafeteria, injuring her knees, lower back, and neck. (Tr. 79, 87, 353). She continued to

---

[2] References to "Tr." are to the administrative record in this case.
[3] A hearing was also held before a different ALJ, Nancy L. Pasiecznik, on February 25, 2013 (Tr. 30-69), but ALJ Pasiecznik became unavailable after that hearing, and the case was reassigned to ALJ McDougall (Tr. 12).
[4] With regard to Fry's date last insured, the record indicates that it is March 31, 2014 (Tr. 105), but the ALJ stated in his decision that it is actually June 30, 2017 (Tr. 14). It is unclear which date is correct.

work in the cafeteria until November 1, 2011, when she injured her back while lifting a frozen pizza box. (Tr. 76-78, 684). Fry visited several medical providers in connection with her workplace injuries, and the relevant medical evidence is summarized below.

### Dr. Gosy

Dr. Eugene Gosy, a pain management specialist, began regularly treating Fry for back pain in 2009. (Tr. 341-82, 585-662, 753-72, 786-826, 838-46). Dr. Gosy assessed a fifty percent temporary impairment in May 2011 (Tr. 397-401), a one-hundred percent temporary impairment in January 2012 (Tr. 590-94), a sixty-six percent temporary impairment in November 2013 (Tr. 802-06), and a thirty-three percent temporary impairment in February 2014 (Tr. 793-97). Dr. Gosy prescribed various medications and administered epidural and trigger point injections to help treat Fry's pain.

On April 13, 2016, after the ALJ had already denied Fry's claim, Fry visited Dr. Gosy for evaluation and treatment of her neck pain. Fry started having neck-related symptoms approximately five years before the appointment, but her symptoms went untreated because her neck injury "was not accepted to be part of her [workers' compensation] case." On examination, Fry had fifty percent reduced cervical range of motion, mild weakness in her hands, and mild proximal loss of strength in her left leg. Dr. Gosy diagnosed "escalating severe cervicalgia with neurologic deficits in the upper limbs as well as [the] left lower limb." He assessed a "total" disability status and ordered a cervical spine MRI, which was performed on April 15, 2016. (Dkt. No. 12-2 at 2-6).

On June 6, 2016, Fry visited Dr. Gosy's associate, Dr. Nikita Dave, for evaluation and treatment of her neck pain. Dr. Dave noted the results of the cervical spine MRI[5]

---

[5] "The [MRI] findings suggest bilateral facet disease at C3-4, more prominent on the left without central stenosis. C4-5 minimal bulge and no central stenosis, though there is mild facet disease and

before diagnosing cervicalgia, radiculopathy in the cervical region, and myalgia. (*Id.* at 7-8).

### *Dr. Marconi*

On February 23, 2011, Dr. Louis Marconi, a chiropractor, reviewed Fry's medical records in connection with her workers' compensation claim. Relying on the New York State workers' compensation guidelines, Dr. Marconi opined that Fry no longer needs chiropractic treatment for her 2004 workplace injuries. (Tr. 497-500). On September 21, 2011, Dr. Marconi performed an independent medical examination and again found that further chiropractic treatment is not warranted. (Tr. 491-96).

### *Dr. Luzi*

On August 15, 2011, Fry visited Dr. Frank Luzi for knee pain. Dr. Luzi requested MRIs of Fry's knees, and based on his subsequent review of the MRI results, he concluded that Fry's knee problems are most likely related to her back condition. (Tr. 443-45).

### *Dr. Arora*

On November 1, 2011, Fry visited Dr. Gautam Arora for an internal medicine consultative examination in connection with her DIB claim. Fry complained of neck, back, and knee pain, and she described the neck pain as "sharp shooting" pain associated with tingling, burning, and numbness in her hands. On examination, Fry had reduced range of motion in her cervical spine, lumbar spine, and right knee. Straight leg raising test was

---

uncovertebral hypertrophy with minimal left foraminal stenosis. At C5-6, there is a broad disc osteophyte complex 3 mm with effacement of the anterior subarachnoid space, mild indentation on the ventral spinal cord. Bilateral facet disease and uncovertebral disease resulting in bilateral moderate foraminal stenosis. At C6-7, broad disc osteophyte complex slightly more to the right with anterior subarachnoid effacement and mild indentation on the spinal cord. Bilateral facet disease and uncovertebral disease with mild to moderate foraminal stenosis bilaterally. At C7-T1, mild facet disease." (Dkt. No. 12-2 at 7).

positive on the right but negative on the left.  Fry had a normal gait and stance and could heel-toe walk, squat, and rise from her chair.  She did not use an assistive device and did not need help changing for the exam or getting on and off the exam table.  She had full range of motion of her shoulders, elbows, forearms, wrists, hips, ankles, and left (but not right) knee.  Dr. Arora diagnosed chronic lower back pain, lumbar spondylosis/lumbar radiculopathy, cervical spondylosis, asthma, and right knee osteoarthritis.  He rendered the following medical source statement:

> The claimant has moderate limitation of lifting heavy weights and carrying objects secondary to cervical spondylosis/lumbar spondylosis.  Mild limitation of standing and walking long distances secondary to right knee osteoarthritis and lumbar radiculopathy.  Claimant should avoid exposure to smoke, dust and other known respiratory irritants.

(Tr. 447-50).

### *Eastern Niagara Hospital*

On November 2, 2011, Fry visited Eastern Niagara Hospital after she injured her lower back at work the day before.  (Tr. 684).  Fry returned to Eastern Niagara Hospital on February 10, 2012 complaining of neck and back pain.  (Tr. 680).

### *UB Family Medicine*

A December 30, 2011 treatment note from UB Family Medicine indicates that Fry complained of paresthesia (burning and tingling) in her neck.  Fry requested a doctor's note stating that she can no longer work due to her November 1, 2011 workplace injuries.  (Tr. 460-62).

*Dr. Carr*

On February 9, 2012, Dr. Daniel L. Carr performed an independent medical examination in connection with Fry's 2011 workers' compensation claim. Dr. Carr opined that Fry has no new injuries from her November 1, 2011 workplace accident, and, therefore, she is not disabled from that incident. (Tr. 486-90). At an April 11, 2013 examination, Dr. Carr assessed multilevel degenerative disease of the lumbar spine. He found Fry capable of working but noted that she should avoid repetitive axial loading of the spine (such as running and jumping) and lifting more than thirty pounds. (Tr. 773-78).

*Dr. Lee*

On May 11, 2012, Dr. Charles Lee, a state agency medical consultant, reviewed Fry's medical records in connection with her DIB application. Dr. Lee listed Fry's primary diagnosis as "Disorder of Back (lumbar & cervical)" and her secondary diagnosis as "Osteoarthritis, Knee." He opined that Fry can occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, stand and/or walk three hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and pull without limit. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but she cannot climb ladders, ropes, or scaffolds. (Tr. 706-11).

B. *Administrative Hearing Testimony*

Born in 1959, Fry was fifty-five-years old on the day of the hearing. (Tr. 75). She has not worked since November 2011, when she injured her back at work lifting a pizza box. (Tr. 78, 91). Fry testified that she cannot work because she has muscle spasms and her back goes out. (Tr. 80). She also suffers from leg problems, numbness in her fingers, and headaches. (Tr. 84, 87, 94). Her husband helps her cook, clean, and do the

dishes and laundry. (Tr. 83). She has difficulty getting dressed and showering. (Tr. 95-96). She can lift a gallon of milk, walk for fifteen minutes, sit for twenty minutes, and stand long enough at the sink to wash a few dishes. (Tr. 81-85).

## **DISCUSSION**

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine

conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions, even if supported by substantial evidence, must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*,

712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional

capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.  *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Fry has not engaged in substantial gainful activity since June 10, 2011, her alleged onset date. (Tr. 14).[6] At step two, the ALJ concluded that Fry has the following severe impairment: "vertebrogenic." (Tr. 15). At step three,

---

[6]  The ALJ appears to have overlooked that Fry amended her onset date to November 1, 2011. (Tr. 33).

- 10 -

the ALJ found that Fry does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Before proceeding to step four, the ALJ assessed Fry's RFC as follows:

> [T]he claimant had the residual functional capacity to perform the full range of light work as defined in [20 C.F.R. §404.1567(b)].[7] The claimant can occasionally lift 20 pounds and frequently lift 10 pounds. She can sit for about six hours in an eight-hour day and stand about six-hours in an eight-hour day.

(Tr. 16). Proceeding to step four, the ALJ found that Fry can perform her past relevant work as a hotel maid. (Tr. 23). Therefore, without proceeding to step five, the ALJ concluded that Fry was not under a disability within the meaning of the Act from June 10, 2011 through the date of his decision. (Tr. 24).

IV. *Fry's Challenges*

Fry challenges the Commissioner's disability decision on six grounds: (1) the ALJ assessed her RFC without performing a function-by-function assessment of her limitations and restrictions; (2) the ALJ did not properly develop the record because he failed to request a medical source statement from Dr. Gosy regarding her physical limitations; (3) the ALJ misevaluated Dr. Lee's opinion; (4) the ALJ should have found her neck impairment to be a severe impairment; (5) her claim should be remanded for consideration of new evidence regarding her neck impairment; and (6) the ALJ should have found a closed period of disability between November 1, 2011 and November 14, 2013. The Court will address each argument in turn.

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §404.1567(b).

A. *Function-by-Function Assessment*

Fry first argues that the ALJ should have performed a function-by-function assessment of her limitations and restrictions — in particular, Fry argues that that ALJ should have addressed the postural limitations in Dr. Lee's May 11, 2012 opinion. (*See* Dkt. No. 14 (Fry's Reply Br.) at 3).

Contrary to Fry's argument, the ALJ discussed the postural limitations in Dr. Lee's opinion and explained why he did not give great weight to those limitations. (Tr. 22-23). The ALJ's decision makes clear that he considered whether Fry has any postural limitations but ultimately concluded that she does not. *See Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013). Therefore, Fry's first objection is without merit.

B. *Development of the Record*

Fry next argues that the ALJ should have requested a medical source statement from Dr. Gosy regarding her physical limitations.

An ALJ's failure to request a medical source statement from a treating source does not require remand so long as the record contains sufficient evidence from which the ALJ can assess the claimant's residual functional capacity. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order); *see also Pellam v. Astrue*, 508 F. App'x 87, 89-90 (2d Cir. 2013) (summary order) (finding no error in failure to acquire medical source statement from treating physicians where the ALJ's RFC assessment was supported by the opinion of a consultative examiner and the ALJ had treatment notes from the treating physicians). The record in this case contains sufficient evidence from which the ALJ could determine Fry's RFC. For example, the record contains several medical opinions regarding Fry's limitations, including one from Dr. Carr to which the ALJ

assigned some weight. (Tr. 23, 773-78). The record also includes nearly two-hundred pages of treatment notes from Dr. Gosy. The ALJ gave great weight to these notes in concluding that Dr. Gosy significantly relieved Fry's pain and increased her ability to function. (Tr. 22). Given the opinion evidence and Dr. Gosy's voluminous treatment notes, the ALJ's failure to request a medical source statement from Dr. Gosy does not require remand. See *Tankisi*, 521 F. App'x at 34; *Pellam*, 508 F. App'x at 89-90.

    C. <u>*Dr. Lee's Opinion*</u>

Fry argues that the ALJ should not have declined to give great weight to Dr. Lee's opinion "for the sole reason that it was inconsistent with that of Dr. Gosy." (Dkt. No. 12-1 (Fry's Br.) at 20).

The Commissioner's regulations direct an ALJ to consider certain factors in weighing a medical opinion — namely, the examining and treatment relationship, the amount of evidence supporting the opinion, the consistency of the opinion with the record as a whole, whether the medical source is a specialist, and any other factor that tends to support or contradict the opinion. See 20 C.F.R. §404.1527(c)(1)-(6). A "slavish recitation" of each factor is not required so long as the ALJ's reasoning and adherence to the regulation are clear. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). The ALJ's reasons for discounting Dr. Lee's opinion are clear here. The ALJ noted for instance that Dr. Lee is a state agency review physician who neither examined nor treated Fry but rather only reviewed her medical records. (Tr. 22); 20 C.F.R. §404.1527(c)(1), (2). The ALJ also explained how Dr. Fry's opinion is inconsistent with Dr. Gosy's and Dr. Luzi's findings. (Tr. 23); 20 C.F.R. §404.1527(c)(4). The ALJ's thorough discussion of Dr. Lee's opinion and his comparison of it to other evidence in the

record provides a meaningful basis for judicial review of his decision to discount the opinion. Therefore, Fry's third objection is without merit.

      D. *Severe Impairment*

Fry argues that the ALJ should have found her neck impairment to be "severe" under the second step of the five-step sequential evaluation process.

Under the second step, the ALJ must determine whether the claimant has a "severe impairment," *i.e.*, "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Here, the ALJ found that Fry has a severe impairment of "vertebrogenic." (Tr. 15). The Commissioner suggests that the ALJ meant to say "vertebrogenic disorder" and that a "vertebrogenic disorder" is "a disease of the vertebrae, which would cover [Fry's] cervical spondylosis." (Dkt. No. 13-1 (Commissioner's Br.) at 13). The Court disagrees and finds "vertebrogenic" to be a vague term that inadequately describes whether or not Fry's neck impairment is a severe impairment. Although the failure to correctly identify a severe impairment may be harmless if the ALJ considers the impairment later in his analysis, *see Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order), such is not the case here because the ALJ hardly discussed Fry's neck impairment in his decision. The case should thus be remanded to allow the ALJ to clarify whether or not Fry's neck impairment is "severe." The ALJ should also consider Fry's neck impairment in assessing her RFC and determining whether or not she can perform her past work and adjust to other work.

E. *New Evidence*

Fry asks the Court to remand the case to allow the ALJ to consider new evidence concerning her neck impairment, namely: (1) Dr. Gosy's April 13, 2016 treatment note regarding her neck pain; (2) the April 15, 2016 cervical spine MRI results; and (3) Dr. Dave's June 6, 2016 treatment note regarding her neck pain and the results of the April 15, 2016 MRI. The new evidence is attached to Fry's brief. (*See* Dkt. No. 12-2).

The Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g). "Thus, an appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks and citations omitted). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [the] claimant's application differently." *Id.*

Applying the above standard, Fry's evidence is new and she has good cause for not submitting it earlier because the evidence did not exist at the time of the ALJ hearing. *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). The evidence is not cumulative of other evidence in the record because the record contains very little information regarding Fry's neck pain and no cervical spine MRI. Dr. Gosy did not even begin treating Fry's neck pain until 2016 because her neck pain "was not accepted to be part of her [workers' compensation] case." (Dkt. No. 12-2 at 4). Fry's new evidence is probative and

relevant to the period before the ALJ's decision because the evidence indicates that Fry has had neck problems for many years. Finally, there exists a reasonable possibility that the new evidence would have influenced the Commissioner to decide Fry's claim differently because the ALJ barely discussed Fry's neck impairment and neck pain in his decision. Although the ALJ did mention Dr. Arora's finding that Fry has cervical spondylosis (Tr. 17), it is not clear whether the ALJ found Fry's neck impairment to be "severe" and to what extent he considered the impairment in assessing her RFC. If the ALJ had the benefit of Fry's new evidence, he might very well have weighed the evidence differently, assessed a different RFC, and decided her application in her favor. Therefore, this case should be remanded for consideration of Fry's new evidence.

      F. <u>Closed Period of Disability</u>

Fry asks the Court to find her disabled as of November 1, 2011 until November 14, 2013 and to remand for calculation of benefits for this period based upon Dr. Gosy having found her one-hundred percent disabled during this period.

The Court may remand for calculation of benefits "only if the record provides 'persuasive evidence of total disability that render[s] any further proceedings pointless.'" *Kress v. Barnhart*, 297 F. Supp. 2d 623, 624 (W.D.N.Y. 2004) (quoting *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999)). Persuasive evidence of total disability does not exist here. Although Dr. Gosy assessed a one-hundred percent temporary impairment at appointments between November 1, 2011 and November 14, 2013, he also found that Fry benefited from treatment during this period. (Tr. 18-19). In addition, Dr. Carr opined during this period that Fry is capable of returning to work. Dr. Gosy's treatment notes and

Dr. Carr's opinion cast doubt on Fry's claim of total disability, making remand for calculation of benefits inappropriate here.

## **CONCLUSION**

For the foregoing reasons, it is recommended that Fry's motion for judgment on the pleadings (Dkt. No. 12) be granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) be denied, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

Dated: October 26, 2017

Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge